D. Maimon Kirschenbaum
Denise A. Schulman
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x
**CYNTHIA "CYNTHEE" DEFREN,**

      **Plaintiff,**

      **v.**

**THE UNITED GROUP OF COMPANIES,**
**INC.,**

      **Defendant.**
-----------------------------------------------------x

**CASE NO.:**  1:21-CV-349 (GTS/DJS)

**COMPLAINT**

**DEMAND FOR JURY TRIAL**


Plaintiff Cynthia Defren alleges as follows:

## JURISDICTION AND VENUE

1.    Plaintiff Cynthia Defren brings this action against Defendant The United Group of Companies, Inc. ("UGOC") alleging claims of retaliation and interference in violation of the Family and Medical Leave Act ("FMLA") 28 U.S.C. §§ 2601, *et seq*., and discrimination claims brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290, *et seq.*

2.    This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the FMLA. This Court has supplemental jurisdiction over the NYSHRL claims, as they are so related to the claims in this action within the Court's original

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this District because Defendant conducts business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

4.      Defendant The United Group of Companies, Inc. ("UGOC" or "Defendant") is a New York corporation with its primary place of business in Albany, NY. UGOC manages independent senior living facilities owned by other companies throughout the United States.

5.      Plaintiff Cynthia "Cynthee" Defren ("Plaintiff") resides in Syracuse, New York and was employed by UGOC from early 2019 until her wrongful termination in February 2021.

## FACTS

6.      Plaintiff began working for Defendant as a regional manager in early 2019.

7.      By 2021, Plaintiff was managing six properties for three companies: (1) three for Livingston Group ("Livingston"), two of which were in New York, and one of which was in Illinois; (2) two for Galil Management, one of which was in New York, and the other of which was in Georgia; and (3) one for Crow Holdings in Maryland.

8.      Plaintiff was an excellent employee.  Until the issues relating to her FMLA protected leave/disability, there had never been any complaints or issues with her performance.

9.      In or about late March 2020, Plaintiff began to experience serious respiratory issues, which got progressively worse throughout 2020.  Plaintiff was diagnosed with glass-ground opacity, and her doctors believed it may have been caused by COVID-19.

10.     Despite the above, Plaintiff continued to work throughout 2020, visiting her assigned sites in person as necessary (except during several travel freezes imposed by UGOC because of COVID-19 related issues/travel restrictions).

11.     In late 2020, Plaintiff's condition progressed to the point where her doctor told her that between December 29, 2020 and February 28, 2021 she could only travel in her own car.

12.     In the beginning of 2021, Plaintiff believed that her doctor was likely to instruct her not to travel at all and to take a period of time off work completely.  Accordingly, on February 3, 2021 Plaintiff requested FMLA paperwork from UGOC.

13.     During this period of time, Plaintiff informed her direct supervisor, Michael DiGiacomo, VP of Student and Senior Housing, about her progressing condition.  She also informed him that she was suffering extreme back pain which might impinge on her ability to travel.  (In fact. after Plaintiff learned of her termination she was diagnosed with a fractured L5 vertebrae.)

14.     On February 8, 2021, Mr. DiGiacamo informed Plaintiff that UGOC was terminating her employment.  Mr. DiGiacamo stated that the reason for Plaintiff's termination was that Livingston no longer wanted Plaintiff to manage their properties.

15.     Plaintiff had an excellent relationship with Livingston prior to her travel restrictions.  If Livingston did in fact ask for Plaintiff to be removed from their properties, it was clearly related to Plaintiff's disability.

16.     Even if Plaintiff had to be removed from her Livingston properties, Defendant could easily have accommodated Plaintiff – rather than firing her – in at least two ways, one of which Plaintiff explicitly requested at the time of her termination: (A) UGOC could have allowed Plaintiff to continue working part-time on the Galil and Crow Holdings properties, as

both companies were very pleased with their relationships with Plaintiff; or (B) UGOC could have moved another regional manager to the Livingston Properties and reassigned Plaintiff to some of the many other local properties UGOC managed.

17.     Instead, UGOC simply terminated Plaintiff's employment mere days after she requested FMLA paperwork because of a disability without even discussing a possible reasonable accommodation with her.   This was plain FMLA retaliation/interference and disability discrimination.

18.     After Plaintiff's termination, Plaintiff's contact at Galil informed Plaintiff that Mr. DiGiacamo had stated to him that UGOC desperately tried to keep Plaintiff at Galil, but Plaintiff refused to stay.

19.     Plaintiff's contact called Plaintiff because he correctly believed that Mr. DiGiacamo was lying and that Plaintiff would have happily remained at Galil had UGOC not terminated her.   This exchange indicates both Mr. DiGiacamo's nefarious intent and behavior, and the ease with which UGOC could have accommodated Plaintiff's disability by allowing her to continue working at the Galil properties.

20.     Plaintiff has suffered lost income, enormous damage to her professional reputation, and serious stress from this discriminatory termination and the devastating effects of losing her employment during an international pandemic.

**<u>FIRST CLAIM FOR RELIEF</u>**
**(FMLA Retaliation and Interference**
**with FMLA Leave – 29 U.S.C. § 6501 *et seq.*)**

21.     Defendant is an employer under the FMLA, as it employed more than 50 employees within a 75 mile radius in New York state.

22.     In violation of the FMLA, Defendant intentionally discriminated and retaliated against Plaintiff because she requested FMLA protected leave.

23.     In violation of the FMLA, Defendant interfered with Plaintiff's ability to take protected leave.

24.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including but not limited to loss of income, including past and future salary, and benefits.

25.     As a result of Defendant's unlawful conduct, Plaintiff is entitled to recover compensatory damages, liquidated damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### SECOND CLAIM FOR  RELIEF
**New York State Human Rights Law – N.Y. Exec. Law §§ 290 *et seq.***
**Disability Discrimination**

26.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

27.     In violation of NYSHRL, Defendant intentionally discriminated against Plaintiff on the basis of her disability.

28.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

29.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

30.     As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and damages for emotional distress, physical

injuries, and medical treatment; punitive damages; pre- and post-judgment interest; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. An award of damages, according to proof, including, back pay, front pay, compensatory damages, emotional distress damages, liquidated damages, and punitive damages, to be paid by Defendant;

B. Penalties available under applicable laws;

C. Costs of action incurred herein, including expert fees;

D. Attorneys' fees;

E. Pre-judgment and post-judgment interest, as provided by law; and

F. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated:  New York, New York
   March 26, 2021

Respectfully submitted,

JOSEPH & KIRSCHENBAUM LLP

By: */s/ Denise A. Schulman*
  D. Maimon Kirschenbaum
  Denise A. Schulman
  32 Broadway, Suite 601
  New York, NY 10004
  Tel: (212) 688-5640
  Fax: (212) 688-2548

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.